**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

TOMMY A. D.,               )
                                   )
               PLAINTIFF,       )
                                   )
vs.                           )        CASE NO. 18-CV-536-FHM
                                   )
Andrew M. Saul, Commissioner of   )
Social Security,               )
                                   )
               Defendant.    )

## OPINION AND ORDER

Plaintiff, TOMMY A. D., seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1]  In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards.  *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017

---

[1]  Plaintiff Tommy A. D.'s application was denied initially and upon reconsideration.  A hearing before an Administrative Law Judge (ALJ) Christopher Hunt was held August 8, 2017.  By decision dated November 3, 2017, the ALJ entered the findings which are the subject of this appeal.  The Appeals Council denied Plaintiff's request for review on August 10, 2018.  The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

(10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 56 years old on the alleged date of onset of disability and 59 years old on the date of the denial decision. He received his GED and past work includes a construction worker, construction laborer, day worker laborer, production assembler, and milk farm worker. [R. 23]. Plaintiff claims to have been unable to work since July 29, 2015[2] due to vision problems, arthritis, lump on groin, hepatitis C, anxiety, depression, breathing problems, ear infection carpal tunnel, steel rod in left leg, heat stroke, and joint pain. [R. 213].

---

[2] Plaintiff amended his alleged onset date from October 31, 2012 to July 29, 2015. [R. 15].

## The ALJ's Decision

The ALJ determined that Plaintiff has the following severe impairments: generalized anxiety disorder and major depressive disorder. [R. 17]. The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels. Plaintiff is limited to simple, repetitive, and routine tasks with only occasional contact with co-workers, supervisors, and the public. He should work with things rather than people. [R. 19]. The ALJ determined at Step Four that Plaintiff was able to perform his past relevant work as a construction worker, day worker laborer, and production assembler. [R. 31]. Therefore, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act. [R. 25]. Further, based on the testimony of the vocational expert, the ALJ determined at Step Five that there are a significant number of jobs in the national economy that Plaintiff could perform. [R. 23-25]. The case was thus decided at Step Four with an alternative Step Five finding of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts that: 1) the ALJ failed to follow the law at Step Four of the Sequential Evaluation Test; 2) the RFC assessment is not supported by substantial evidence; 3) the ALJ failed to develop and failed to follow the testimony of the vocational expert witness that was favorable to Plaintiff, and 4) the Decision in this case was rendered by an Administrative Law Judge whose appointment was invalid at the time he rendered his decision. [Dkt. 19, p. 5].

## <u>Analysis</u>

### Step Four

At step four of the evaluative sequence the ALJ determines whether the Plaintiff can return to any past relevant work with his RFC.  Even if the Plaintiff's allegations about the step four finding have merit, any step four error is harmless because the ALJ made alternative step five findings that there are other jobs in the economy that Plaintiff could perform with the RFC limitations.  As a result, there is no point in addressing Plaintiff's allegations of error pertaining to step four.  Any error at step four cannot, standing alone, constitute a basis for remand of the ALJ's decision.

### **Residual Functional Capacity**

Plaintiff argues that the ALJ's RFC determination was not based on substantial evidence.  Further, the ALJ failed to fully develop the record by failing to call a medical advisor to testify regarding Plaintiff's true residual functional capacity.  [Dkt. 19, p. 8-13]. Plaintiff specifically takes issue with the ALJ's RFC finding that he can lift 100 pounds[3] as there is no evidence that he, in his advanced age[4], could lift more than 20 pounds.  [Dkt. 19, p. 9-13].

The determination of RFC is an administrative assessment, based upon all of the evidence of how the claimant's impairments and related symptoms affect her ability to perform work related activities. See Social Security Ruling (*SSR*) 96-5p, 1996 WL

---

[3]  Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.  20 C.F.R. § 404.1567.
[4]  Plaintiff's date of birth is September 26, 1958 and was 59 years of age on the date of the Denial Decision.

374183, at *2, *5. The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all of the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ. *See* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. In making the RFC assessment, an ALJ considers how an impairment, and any related symptoms, may cause physical and mental limitations that affect what a claimant can do in a work setting. 20 C.F.R. § 404.1545(a)(1). The RFC represents "the most [a claimant] can still do despite [his] limitations." *Id*.

On October 14, 2015, Plaintiff was evaluated by consultative examiner, Azhar Shakeel, M.D. Plaintiff reported generalized pain all over including his arms, shoulders, legs, lower back, and ankles. Dr. Shakeel noted Plaintiff was cooperative, conversant, well kept, properly nourished, and not in acute distress. The examination revealed non-tender full range of motion in all areas; grip strength was equal bilaterally; able to perform both gross and fine tactile manipulation; gait was safe and at appropriate speed; heel/toe walking and tandem gait was within normal limits. Dr. Shakeel opined that Plaintiff had generalized pain but was able to perform activities of daily living as well as work. [R. 313-319]. The State examining physicians at the initial and reconsideration level agreed that Plaintiff's physical allegations were non-severe. [R. 61, 79].

The ALJ accurately and fully discussed the medical record which revealed Plaintiff's alleged physical limitations were non-severe. Clearly, the ALJ considered the medical evidence and the testimony from Plaintiff regarding his activities of daily living which included performing odd jobs, no problems with personal hygiene, caring for an

elderly man by cooking and making sure he takes his medications.  Plaintiff was also able to do laundry, prepare meals, shop, and do housework.  [R. 19-20].  The court finds that the ALJ's physical residual functional capacity determination is supported by substantial evidence.

Plaintiff also contends the ALJ erred in his findings regarding his mental RFC. Plaintiff presented to Kenny A. Paris, Ph.D., for a mental status examination on October 21, 2015.  Plaintiff stated he had feelings of depression, sleep disturbance, low energy, and problems with memory and concentration.  Plaintiff found it difficult to be around others and described symptoms consistent with panic attacks and agoraphobia.  Dr. Paris noted that Plaintiff's thoughts were organized, logical, goal-directed, and he was able to stay focused.  Thought content was appropriate and he did not appear to be responding to unusual internal stimuli.  Plaintiff related that he had not been to a doctor in over ten years and had never been hospitalized for psychiatric reasons.  Further, he had a lifelong history of alcohol and illicit drug dependence.  Plaintiff was casually and appropriately dressed, and hygiene was appropriate.  Plaintiff's posture and gait were normal and he was of average intelligence.  Plaintiff had no significant problems with persistence or pace.  Dr. Paris found Plaintiff had a Global Assessment of Functioning[5] (GAF) of 50. Based on Plaintiff's overall cognitive level, ability to think abstractly, and his ability to function appropriately socially and emotionally, his judgment was estimated to be

---

[5]  The Global Assessment of Functioning (GAF) score is a subjective rating on a one hundred point scale, divided into ten numerical ranges.  The GAF permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning.  *See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders,* 32, 34 (Text Revision 4th ed.2000)("DSM-IV-TR).

adequate. Dr. Paris opined that Plaintiff's ability to perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors or co-workers was estimated to be below average. [R. 320-325]. The ALJ gave great weight to the opinion of Dr. Paris as he was the only mental health professional that evaluated Plaintiff. However, the ALJ gave no weight to the GAF score because GLOBAL assessment "paints a rather broad picture that is somewhat less definitive with respect to particular aspects of workplace functioning. . ." [R. 22].

State agency psychologists opined that Plaintiff was able to adapt to a work situation, was limited to simple and complex tasks, and unable to work with the general public which was consistent with the RFC assessment. The ALJ accorded diminished weight to the medical opinions of the non-examining State agency psychologists because their opinions were issued in compliance with Regulations that were no longer in effect. [R. 22].

The only opinions in the record for the ALJ to consider were those of State agency examining and reviewing physicians.[6] The ALJ properly focused on the functional consequences of Plaintiff's mental and physical condition and his description of the state

---

[6] Aside from the opinions provided by State Agency examining and non-examining physicians, evidence of physical or mental impairments or treatment is nearly non-existent. The record before the ALJ contained only a few treatment notes. [R. 329-49]. Plaintiff presented for counseling at Grand Lake Mental Health Center, Inc., on two occasions – June 20 and June 30, 2017. Plaintiff's mood was sad. However, he was well groomed, had good eye contact, attention span was good, thought process was linear, and oriented to person, place, and date. [R. 346-49]. There are three medical records from Salina Family Medical Center for December 20, December 22, and December 27, 2016. Plaintiff complained of intermittent chest pain, feeling hot, and heart pumping. Plaintiff declined to go to the emergency room for chest pain and high blood pressure. Plaintiff reported no changes in sleep pattern, anxiety, difficulty focusing, depression, moodiness, or suicidal thoughts or attempts. Plaintiff's gait was normal and motor examination revealed normal tone, bulk, and strength. Plaintiff exhibited appropriate judgment and good insight. The other two visits were in follow up to Plaintiff's high blood pressure. [R. 329-343].

agency doctors' findings are accurate.  See e.g. *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment), *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work), *Scull v. Apfel*, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250* (disability determinations turn on the functional consequences, not the causes of a claimant's condition).  Accordingly, the court sees no error in the ALJ's mental residual functional capacity determination.

Plaintiff argues that the ALJ failed to fully develop the record by failing to call a medical advisor to testify as to Plaintiff's true residual function capacity.  However, the ALJ had no obligation to do so.  Plaintiff's counsel had no objections to record, [R. 33], nor did he request the ALJ call upon the services of a medical expert.  [R. 33].  The ALJ has a basic obligation to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.  *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir.1993).  However, "[s]uch duty does not allow a claimant, through counsel, to rest on the record – indeed, to exhort the ALJ that the case is ready for decision – and later fault the ALJ for not performing a more exhaustive investigation."  *See Maes v. Astrue,* 522 F.3d 1093 (10th Cir. 2008)(citing *Branum v. Barnhart,* 385 F.3d 1268, 1271-72 (10th Cir. 2004)(concluding that the ALJ

satisfactorily developed the record when the claimant's "counsel did not indicate or suggest to the ALJ that any medical records were missing from the administrative record, nor did counsel ask for the ALJ's assistance in obtaining any additional medical records").

## ALJ's Alternate Findings at Step Five

Plaintiff argues that because the ALJ failed to develop a proper RFC in this case it follows that he did not properly develop the vocational testimony in this case. [Dkt. 19, p. 13-14]. Plaintiff contends that the ALJ failed to ask the vocational expert witness a hypothetical question which took into account the mental impairments opined by consultative examiner, Kenny Paris, Ph.D. It is Plaintiff's position that on cross-examination by counsel, the vocational expert testified that someone whose ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors or co-workers is below average would not be able to perform at the substantial gainful activity level. [Dkt. 19, p. 14; R. 54].

Hypothetical questions should be crafted carefully to reflect a claimant's RFC, as "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.1991) (quotation omitted); see also *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995) (noting "the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record"). In posing a hypothetical question, the ALJ need only set forth those physical and mental impairments which are accepted as true by the ALJ. See *Kepler v. Chater*, 68 F.3d 387, 392 (10th Cir. 1995) (citing *Talley v. Sullivan*,

908 F.2d 585, 588 (10th Cir. 1990) (stating that the ALJ is not bound by the vocational expert's opinion in response to a hypothetical question which includes impairments that are not accepted as true by the ALJ).

The hypothetical question posed to the vocational expert by the ALJ included limitations to simple, repetitive, and routine tasks with only occasional contact with co-workers, supervisors, and the general public. While Plaintiff is focused on the ALJ's limitation of "occasional" contact exceeding Dr. Paris' "below average" limitation, the ALJ specifically found that Plaintiff should work with things rather than people. Thus, Dr. Paris' limitations that were accepted by the ALJ were reflected in the ALJ's RFC assessment. [R. 49-50]. As this court has decided, the ALJ's RFC assessment was based on the substantial evidence of record. The hypothetical questions posed by the ALJ to the vocational expert were appropriately based on the RFC assessment and were not deficient. Thus, this court finds that ALJ's reliance on the vocational expert's testimony was proper.

## Appointments Clause Claim

Plaintiff argues that the ALJ who decided his case was not appointed in compliance with the Appointments Clause of the Constitution.[7] [Dkt. 19, p. 15]. The Commissioner does not dispute that the ALJ was not constitutionally appointed[8] but argues that the court

---

[7]  The Appointments Clause of the Constitution requires the President "to appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States." U. S. Const. art. II, § 2, cl. 2. It further provides that "Congress may by Laws vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the heads of Departments." *Id*.

[8]  For purposes of this brief, Defendant does not argue that SSA ALJs are employees rather than inferior

should not consider the argument because Plaintiff did not raise the issue during the administrative proceedings on his claim for benefits. To be clear, the Commissioner does not contend that Plaintiff failed to complete any of the steps in the administrative process. Rather, the Commissioner argues that Plaintiff failed to raise the particular issue during the administrative process.

The Appointments Clause issue has been raised in a number of recent cases in response to *Lucia v. S.E.C.*, – U.S. –, 138 S.Ct. 2044, 2055, 201 L.Ed.2d 464 (2018) which held that the ALJs in the Securities and Exchange Commission (SEC) were not constitutionally appointed. The courts reviewing Social Security decisions where the Appointments Clause issue has been raised mostly find that the issue was forfeited because it was not raised before the Social Security Administration.[9] These cases rely on the general rule that before an issue can be raised on appeal to the courts, it must have first been raised before the administrative agency. They distinguish the result in *Lucia* based on language in that case that one who makes a "timely" challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief. 138 S.Ct. at 2055. These cases find that the Social Security claimant, having

---

officers. [Dkt. 14, p. 7].

[9] *Fortin v. Comn'r Soc. Sec.*, 2019 WL 1417161 (E.D. NC March 29, 2019)(rejecting magistrate judge's recommendation that court find no forfeiture occurred, finding that *Sims* left open the question of whether judicially created issue exhaustion at the ALJ level makes good sense; noting that Plaintiff in *Fortin* only brought up Appointments Clause issue in supplemental briefing after summary judgment), *Pearson v. Berryhill*, 2018 WL 6436092 (D. Kan. Dec. 7, 2018)(finding 42 U.S.C. § 406(g) contains nonwaivable and nonexcusable requirement that an individual must present a claim to the agency before raising it to the court and finding Plaintiff failed to raise Appointments Clause issue before agency rendered the challenge untimely), *Faulkner v. Commn'r Soc. Sec.*, 2018 WL 6059403 (W.D. Tenn. Nov. 19, 2018)(challenge under Appointments Clause is nonjurisdictional and may be forfeited; challenge forfeited where Plaintiff did nothing to identify challenge before agency and good cause was not shown for failure).

not presented the issue to the administrative agency, has failed to make a timely Appointments Clause challenge. The Commissioner's brief relies on similar arguments.[10]

A small number of cases rely on the Court's analysis in *Sims v. Apfel,* 550 U.S. 103, 105, 120 S.Ct. 2080, 147 L. Ed.2d 80 (2000) and conclude that the Appointments Clause issue was not forfeited.[11] In *Sims* the Supreme Court concluded that Social Security claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues. In reaching this conclusion, the Court considered the following factors.[12] First, requirements to exhaust issues are largely creatures of statute and no statute requires issue exhaustion before the Social Security Administration. Second, while it is common for agency regulations to require issue exhaustion, Social Security regulations do not require issue exhaustion. Third, the reasons why courts generally impose issue

---

[10] The Commissioner also cites five regulations it contends supports requiring issue exhaustion. None of the regulations by their terms require issue exhaustion or notify claimants of an issue exhaustion requirement.

[11] *Kellett v. Berryhill*, 2019 WL 2339968 (E.D. Penn. June 3, 2019)(finding the Appointments Clause issue is an important issue that goes to the validity of SSA proceedings which should be heard even if not properly preserved before the ALJ; discussing *Sims* rationale applied to Appointments Clause issues and finding no forfeiture, and digesting cases), Ready *v. Berryhill*, 2019 WL 1934874 (E.D. .Penn. April 30, 2019)(finding no forfeiture and that it would have been futile for Plaintiff to raise the challenge at the agency level), *Probst v. Berryhill*, –F.Supp.3d – (E.D. NC 2019)(noting majority of courts have determined challenge is forfeited by failure to raise issue before agency, digesting cases; relying on *Sims* and nonadversarial nature of Social Security hearings, finding it would be manifestly unfair to find waiver), *Bizzare v. Berryhill*, 364 F.Supp.3d 418 (M.D. Penn. 2019)(acknowledging result breaks from emerging consensus, noting no statute, regulation or judicial decision indicates that Social Security claimants forfeit judicial review of constitutional claims not raised at the administrative level, finding no authority suggesting that ALJs could resolve constitutional challenges to their own appointment, and finding no forfeiture occurred). See also *Cirko ex rel, Cirko v. Comn'r Soc. Sec.*, 948 F.3d 148 (Third Cir. 2020)(exhaustion of Appointments Clause claim is not required in SSA context).

[12] The court also considered the limited space on the form used to request Appeals Council review and an estimate that it would take only ten minutes to complete the form.

exhaustion requirements do not apply to the non-adversarial process of the Social Security Administration. Fourth, the Social Security Administration does not notify claimants of an issue exhaustion requirement. *Sims*, 120 S.Ct. at 2084-86.

While *Sims* does not address issue exhaustion before the ALJ, the reasons cited by the Supreme Court to reject an issue exhaustion requirement before the Appeals Council also apply to the other steps in the Social Security Administration process. The statute still does not require issue exhaustion. In the 20 years since the *Sims* decision, the Social Security Administration has not enacted any regulation requiring issue exhaustion. The Social Security Administrative process remains non-adversarial and claimants, many of whom are unrepresented, are still not notified of any issue exhaustion requirement. Finally, the undersigned notes that a ruling that *Sims* does not apply to the other steps in the administrative process would result in an issue exhaustion requirement at some steps of the process and not at subsequent steps.

The court is persuaded that the cases finding that no forfeiture occurs when the claimant fails to raise the Appointments Clause issue before the Social Security Administration are better reasoned in light of the Supreme Court's analysis in *Sims*.

The court finds that at the time the decision in this case was entered, November 3, 2017, the ALJ who issued the decision under review was not appropriately appointed under the Appointments Clause of the Constitution. The court further finds that Plaintiff did not forfeit the Appointments Clause claim by failing to raise that issue before the Social Security Administration. As a result, the ALJ's decision is REVERSED and the case is

REMANDED to the Commissioner for further proceedings before a different constitutionally appointed ALJ.

SO ORDERED this 25th day of February, 2020.


FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE